470 F.Supp. 125 (1979)
Charles J. KOBIELNIK
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA and Local 107 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and Eastern States Transportation Co., Inc. and Union Carbide Corporation.
Civ. A. No. 78-2553.
United States District Court, E. D. Pennsylvania.
April 20, 1979.
*126 S. Robert Levant, Philadelphia, Pa., for plaintiff.
Edward Davis, Philadelphia, Pa., for International Broth., etc.
Peter D. Walther, Bala Cynwyd, Pa., for Union Carbide.
Thomas W. Jennings, Philadelphia, Pa., for Local 107.
James A. Matthews, Jr., Philadelphia, Pa., for Eastern States Transp. Co.

MEMORANDUM AND ORDER
TROUTMAN, District Judge.
Pursuant to the Labor Management Relations Act of 1947, 29 U.S.C. § 185, plaintiff instituted this action against his employer, defendant Eastern States Transportation Company, Inc. (Eastern) and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union) and Local 107, of which plaintiff is a member. Plaintiff alleges that his placement on lay-off status violated his seniority rights under the existing collective bargaining agreement[1] between defendant Eastern and the Union, and that the Union, the collective bargaining representative of plaintiff as an Eastern employee, breached its duty of fair representation.
Defendant Eastern, a labor broker which leases drivers to the Linde Division of co-defendant Union Carbide Corporation, employed plaintiff to deliver Linde products to customers from the Linde plant in Essington, Pennsylvania. The Linde division is Eastern's only customer in the Philadelphia area; consequently, all drivers are assigned to the Linde account.
On February 5, 1976, plaintiff allegedly made a delivery to a Linde customer, pumped product into the wrong tank and contaminated thousands of cubic feet of liquid nitrogen. The error forced Linde's customer to close its plant for three days. After "exhaustive investigation" Linde held plaintiff responsible for the incident and informed Eastern that plaintiff would no longer be allowed to deliver Linde products. Eastern then advised plaintiff that he would be maintained on its seniority list and that he would be offered any available work from customers other than Union Carbide. With no such other customers, plaintiff was laid off. Complaining that this arrangement violated his seniority rights, plaintiff filed a grievance with defendant Local 107.
The grievance machinery established by the collective bargaining agreement between Eastern and the Union includes a catena of joint employer-union committees *127 which hear grievances and attempt to resolve them. Any committee level decision, based upon a majority vote, terminates the matter, and such decision cannot be appealed.
Plaintiff's grievance reached the Eastern Conference Joint Area Committee (ECJAC) stage. In prosecuting plaintiff's grievance before the ECJAC, Local 107 contended that the grievance involved a seniority violation, not a discharge, and that any Union Carbide-Eastern agreement by which Eastern agreed to honor a Union Carbide demand to exclude a given driver violated the collective bargaining agreement. Eastern, on the other hand, argued that Union Carbide, as a customer, could refuse to allow any driver to deliver its product. The ECJAC agreed with Eastern and decided that plaintiff had no "claim for work at Union Carbide but the company is obligated to allow the grievant to perform any other work they have in line with his seniority." ECJAC Submission and Decision No. C-112-76.
Plaintiff then instituted this action and alleged that the Union's failure to join Union Carbide as a party to the grievance procedure breached the Union's duty of fair representation. Plaintiff further alleged that defendant Eastern is nothing more than a device to disguise Union Carbide's evasion of its responsibilities under the collective bargaining agreement. Finally, plaintiff alleged that he had no hearing or opportunity to defend himself against the charges and that Local 107 offered no exculpatory evidence on his behalf. Eastern, now moving to dismiss under Fed.R.Civ.P. 12(b)(6), contends that the complaint, which does not allege exhaustion of internal union remedies, fails to state a claim against Eastern.[2] Subsequently, the Union and Local 107 joined in this motion.
As a general rule, a union member charging unfair representation must exhaust available internal union remedies before he may bring an action against the union. Brady v. Trans World Airlines, 401 F.2d 87 (3d Cir. 1968), cert. denied, 393 U.S. 1048, 89 S.Ct. 681, 684, 21 L.Ed.2d 691 (1969); Hubicki v. ACF Industries, Inc., 484 F.2d 519 (3d Cir. 1973). Article XIX of the Union's Constitution provides plaintiff with a procedure by which local union members may file charges against a local union officer for violations of the duties imposed thereunder. Section 12(a) further provides that
(e)very member . . . against whom adverse rulings or decisions have been rendered or who claims to be aggrieved shall be obliged to exhaust all remedies provided for in this Constitution and by the International Union before resorting to any court, tribunal or agency against the International Union, any subordinate body or any officer or employee thereof.
As a union member plaintiff contractually bound himself to follow this procedure. Aldridge v. Ludwig-Honold Manufacturing Co., 385 F.Supp. 695 (E.D.Pa.1974), aff'd, 517 F.2d 1397 (3d Cir.) cert. denied, 423 U.S. 937, 96 S.Ct. 298, 46 L.Ed.2d 270 (1975). Plaintiff has neither fulfilled this requirement nor suggested that to do so would be futile. Instead plaintiff argues that requiring him to bring charges against Local 107 to compel a grievance procedure including Union Carbide "is to suggest that plaintiff be his own representative". Plaintiff's Brief at 9. That is just the point. A union member does indeed have an obligation to use internal union procedures prior to bringing an action against the Union, Vaca v. Sipes, 376 U.S. 171, 184-85, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Hubicki v. ACF Industries, Inc., supra; Pawlak v. Teamsters Local 764, 444 F.Supp. 807, 810 (M.D.Pa. 1977), aff'd, 571 F.2d 572 (3d Cir. 1978), and where the adequacy and availability of the internal union remedies are demonstrated, exhaustion of such remedies is an essential prerequisite to bringing suit against the union.
*128 Furthermore, had plaintiff exhausted his internal union remedies, it might have been shown that the Union did not breach its duty to plaintiff. Under these circumstances the direct action, permitted by Vaca v. Sipes, supra, against the employer (Eastern) would not lie. Neipert v. Arthur G. McKee & Co., 448 F.Supp. 206 (E.D.Pa.1978). Because plaintiff has challenged neither the availability nor the adequacy of the internal union remedies provided by the Union constitution and has not explained satisfactorily his failure to utilize them, the motion of defendants Eastern, the Union and Local 107 will be granted.
Although defendant Union Carbide has not filed or joined in this motion to dismiss, plaintiff's failure to use available internal union remedies impels this Court, sua sponte, to recognize the absence of jurisdiction and to dismiss the complaint against Union Carbide as well.[3]
NOTES
[1] The National Master Freight Agreement and Philadelphia, Pennsylvania and Vicinity Local Cartage Supplement Agreement (NMFA).
[2] We do not reach defendants' argument that plaintiff's claim against Eastern is barred by the final and binding decision of the ECJAC.
[3] See Pawlak v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Local Union 764, 444 F.Supp. 807, 811-12 (E.D.Pa.1977).