Calvin McCLAIN, Individually and on behalf of a class of all others similarly situated

v.

MACK TRUCKS, INC., Mack Boulevard, Allentown, Pennsylvania and Local 677, United Auto Workers, an unincorporated association, 2101 Mack Boulevard, Allentown, Pennsylvania and United Auto Workers, 8000 East Jefferson Boulevard, Detroit, Michigan.

Civ. A. No. 78–382.

United States District Court, E. D. Pennsylvania.

June 12, 1980.

Charles Bowser, William H. Bishop, III, Philadelphia, Pa., for plaintiff.

Carter Buller, Jonathan Boxer, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Mack Trucks.

Richard H. Markowitz, Philadelphia, Pa., for United Auto Workers.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

A lengthy history of absences from work apparently prompted defendant Mack Trucks, Inc. (Mack) to discharge plaintiff, who later sued both his employer and unions, defendants International Union, United Automobile Aerospace and Agricultural Implement Workers of America and Local 677.[1] The unions now move for summary judgment or alternatively to dismiss the paragraphs in the complaint alleging illegal conduct on their part. In the pertinent

---

1. For the full factual background *see McClain v. Mack Trucks, Inc.*, 81 F.R.D. 730 (E.D.Pa. 1979) and *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53 (E.D.Pa.1979).

portions of the complaint plaintiff alleged that

> defendants, Local 677 and the [UAW] are the exclusive bargaining representatives for the plaintiff and members in his bargaining unit. That as the exclusive bargaining representative, the defendants have a statutory duty to fairly represent and serve the interests of the employees without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty and to avoid arbitrary conduct[; [2]]
>
> [t]hat the defendants failed to adequately represent the plaintiff . . . in his grievance against his employer defendant Mack Trucks, Inc., as set forth in the collective bargaining agreement. The defendants have not fairly represented the plaintiff in contesting his termination from the defendant, Mack Trucks, Inc.

Complaint, ¶¶ 45, 46.[3] The unions argue that alleging a breach of a collective bargaining agreement is essential to maintaining an action under the Labor Management Relations Act of 1947, 29 U.S.C. § 185.[4] Careful reading of the complaint, contends the unions, reveals that plaintiff has based his claim against them not upon violations of the collective bargaining agreement, but rather upon the Civil Rights Acts of 1866, 1871 and 1964, 42 U.S.C. §§ 1981, 1983 and 2000e et seq., respectively. Jurisdiction under § 301(a), they conclude, exists only if the action involves a violation of a labor agreement. Plaintiff retorts that at trial he will prove union violation of the terms of the collective bargaining agreement by failing to represent plaintiff properly throughout his tenure with Mack. Therefore, plaintiff declares, § 301(a) provides a jurisdictional base.

In *Adams v. Budd Co.*, 349 F.2d 368 (3d Cir. 1965), the Court of Appeals affirmed the dismissal of a complaint which failed to allege that the union violated a provision of the collective bargaining agreement. The plaintiffs had contended that they could enforce a precontractual "super-seniority" company policy even though subsequently negotiated collective bargaining agreements ceded these rights. The Court of Appeals emphasized that § 301(a), absent diversity, created federal jurisdiction only with respect to "*[s]uits for violation of contracts* between an employer and a labor organization". *Id.* at 370 (emphasis in the original), quoting the statute. Seven years later the Court of Appeals reviewed their conclusion in light of *Vaca v. Sipes*, 368 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and reaffirmed their prior statement. The court again found that the absence of any allegation that defendants violated the collective bargaining agreement precluded use of § 301(a) as a jurisdictional predicate. The plaintiffs had charged the union with unfair representation and "neglect and arbitrary disregard" of plaintiffs' "fair interests" *in negotiating labor contracts*. The court found *Adams* controlling. *See Leskiw v. Local 1470, International Brotherhood of Electrical Workers*, 464 F.2d 721, 723 (3d Cir.), *cert. denied*, 409 U.S. 1041, 93 S.Ct. 526, 34 L.Ed.2d 490 (1972). These rules remain the law of this Circuit. As the Court of Appeals recently indicated,

> section 301(a) does not grant jurisdiction over all disputes between unions and employees. This court has repeatedly stated that section 301(a) provides jurisdiction

---

**2.** That the unions had a duty to represent plaintiff in this manner is not disputed. *See International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

**3.** These allegations comprise Count IV of the complaint. The Court dismissed Count V, a purported class action against the unions. *See McClain v. Mack Trucks, Inc.*, 81 F.R.D. at 733.

**4.** § 301(a) thereof provides that

> [s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

only over *suits for violation of contracts* between an employer and a labor organization . . . [T]he collective bargaining agreement and the arbitration which resulted therefrom, constituted no more than a backdrop for the plaintiffs' claim

. . .

*Medlin v. Boeing Vertol Co.*, 620 F.2d 957 at 961 (3d Cir. 1980).

■ However, in the case at bar plaintiff has alleged a breach of the collective bargaining agreement. Although the breach could have been more artfully pleaded, plaintiff *did* allege that the unions "failed to adequately represent [him] in his grievance . . . as set forth in the collective bargaining agreement". This statement alleged a breach of a duty implied by law into the collective bargaining agreement.[5] Hence, charging the unions with unfair representation sufficiently alleged a breach of the collective bargaining agreement. *Adams* and *Leskiw*, cited by defendants as controlling authority, established a standard for completely different situations. Plaintiffs in those cases complained that the unions failed to represent them adequately *during contractual negotiations.* Here, by contrast, plaintiff did not allege that the collective bargaining agreement did not adequately reflect his interests; rather, he alleged a failure on behalf of the union to comply with the terms of the *existing* agreement. In other words, plaintiff did *not* complain that the bargain struck failed to protect his rights and interests. Instead he charged that the union racially discriminated against him in performing or failing to perform its duties under the existing contract. An allegation of this type supports a § 301(a) action.

5. See n. 2.

6. Art. 33, § 1 provides in pertinent part that "[a]ll . . . members . . . shall be entitled to the right of appeal". § 2 thereof permits a member "who wishes to challenge any action, decision or penalty of that body . . . [to] initiate the challenge before the appropriate body of such Local Union or unit . . . ."

7. Art. 33, § 5 permits "[a]ny member feeling himself aggrieved by an action, decision or pen-

■ However, plaintiff's failure to exhaust internal union remedies bars reaching the merits of his claim. Generally, a union member charging unfair representation

must exhaust available internal union remedies prior to filing suit against the union. *Brady v. Trans World Airlines*, 401 F.2d 87 (3d Cir. 1968), *cert. denied*, 393 U.S. 1048 [89 S.Ct. 681, 21 L.Ed.2d 691] (1969), *Hubicki v. ACF Industries, Inc.*, 484 F.2d 519 (3d Cir. 1973). Of course, under extraordinary circumstances or where exhaustion would be futile, this requirement is excused. *Vaca v. Sipes*, 386 U.S. 171 [, 87 S.Ct. 903, 17 L.Ed.2d 842] (1967), *Aldridge v. Ludwig-Honold Manufacturing Company*, 385 F.Supp. 695 (E.D.Pa.1974), *aff'd*, 517 F.2d 1397 (3d Cir.), *cert. denied*, 423 U.S. 937 [, 96 S.Ct. 298, 46 L.Ed.2d 270] (1975). *Dezura v. Firestone Tire & Rubber Co.*, 470 F.Supp. 121, 124 (E.D.Pa.1979), *aff'd*, 612 F.2d 571 (3d Cir. 1980). Exhaustion is also excused where internal union remedies are inadequate. *Kobielnik v. International Brotherhood of Teamsters*, 470 F.Supp. 125 (E.D.Pa.1979).

Plaintiff does not contest the adequacy and availability of internal union remedies. Article 33 of the International Union Constitution sets forth both the available substantive internal union remedies and the procedures required to pursue them. Article 33 permits an aggrieved member to appeal to the membership of his local union,[6] and if unsuccessful, to appeal to the International Union's Executive Board.[7] A further appeal lies with the Appeals Committee of the Constitutional Convention or the independent Public Review Board.[8]

alty of his subordinate body . . . to appeal that action to the International Executive Board . . . ."

8. Art. 33, § 8 permits "[a]ny member . . . wishing to appeal from any decision of the International Executive Board or an International Trial Committee . . . [to] take an appeal to the Constitution Convention Appeals Committee of the International Union."

§ 10 provides that "[i]f the appellant elects to appeal to the Public Review Board, the appeal

Throughout this entire appeals procedure the aggrieved union member may retain and be represented by counsel, produce witnesses, submit briefs and present evidence.[9] In short, the internal appeal procedures of the International Union appear full and fair. Not surprisingly, several courts have so held.[10]

Contending, however, that the futility of pursuing his internal union remedies excused the requirement plaintiff pointed to supposed hostility of union officers and delay in pressing his grievance. Plaintiff also complained that union officials told "fish stories" and did not prepare plaintiff adequately for hearings. *Complete* satisfaction with the degree of representation union members receive can hardly be expected in every case. The pertinent question, however, is not whether a union member feels content with the manner in which the union handled the matter; rather, the inquiry focuses on whether the union acted in bad faith. And even assuming union officers treated plaintiff discriminatorily because of his race and deliberately procrastinated in acting upon his complaint, plaintiff still had the duty to exhaust the appeal procedure. Plaintiff contractually bound himself to do so when he joined the union. *Aldridge v. Ludwig-Honold Manufacturing Company,* 385 F.Supp. 695 (E.D.Pa.1974), *aff'd,* 517 F.2d 1397 (3d Cir.), *cert. denied,* 423 U.S.

937, 96 S.Ct. 298, 46 L.Ed.2d 270 (1975). Just because local officers and members may shelter loathsome racial prejudices does not mean that the appellate union bodies feel likewise. Plaintiff's claim of racial discrimination is just the type of situation for which unions created appellate bodies, to provide a neutral forum manumitted from the invective of a possibly hostile workplace and the peccadillos of possibly bigoted supervisors and colleagues. In other words, "animus by the local union cannot be imputed to the international body". *Dezura v. Firestone Tire & Rubber Co.,* 470 F.Supp. at 124. Plaintiff never gave the international union an opportunity to hear or act upon his grievance. Nor has plaintiff alleged or offered any direct evidence of such hostility by the international union. Plaintiff never embarked upon an available and adequate avenue of redress. In fact, he never even attempted to initiate the first step of the internal union procedure. To accept plaintiff's proffered excuse would allow him to act as a self-appointed judge and jury deciding the merits of his own charges against the unions. Sanctioning plaintiff's circumvention of this requirement also permits him to rewrite his contractual duties and responsibilities unilaterally. By sidestepping these procedures plaintiff deprived the appellate union bodies of an opportunity to resolve an intraor-

shall be considered by the Board or a panel thereof." The Public Review Board, established by Article 32 of the Constitution, hears appeals from the International Executive Board. Members do not hold offices or receive salaries from the International Union. Prominent community members from all walks of life sit on the Board and have power to grant a member relief as complete as that available in an action for damages in court.

9. Art. 33, § 4 provides that

[a]ny member . . . appealing from any action, decision or penalty of any subordinate body shall be permitted representation before any reviewing body by counsel of his own choice. The appellant and/or counsel shall be afforded full opportunity to present to any reviewing body the appellant's position of all matters bearing upon the action, decision or penalty under review; providing that this right to appear shall be limited to an appearance before a committee or panel of any reviewing body where the reviewing body

has established the committee or panel to conduct a hearing and submit recommendations to the full reviewing body.

10. *See Baldini v. Local Union No. 1095, United Automobile Aerospace and Agricultural Implement Workers of America,* 581 F.2d 145 (7th Cir. 1978), *Newgent v. Modine Manufacturing Company,* 495 F.2d 919 (7th Cir. 1974), *Reid v. United Automobile Aerospace and Agricultural Implement Workers of America, Local 1093,* 80 L.R.R.M. 2886 (D.Okl.1972), *aff'd,* 579 F.2d 517 (10th Cir.), *cert. denied,* 414 U.S. 1076, 94 S.Ct. 572, 38 L.Ed.2d 483 (1973), *Parks v. International Brotherhood of Electrical Workers,* 314 F.2d 886 (4th Cir.), *cert. denied,* 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963), and *compare Winter v. Local Union No. 639,* 569 F.2d 146, 151 n. 26 (D.C.Cir.1978) ("[t]he UAW, significantly, has what is probably the most elaborate and comprehensive system of internal appeals of any American union").

ganizational dispute without the delay, expense and harassment of litigation. Plaintiff wrenched from their control a chance to continue a uniform method for the orderly settlement of employee grievances.[11] These inauspicious consequences further undermine the "strong federal policy of judicial deference to a labor organization's prior opportunity to resolve internal disputes". *Dezura v. Firestone Tire & Rubber Co.*, 470 F.Supp. at 125. Accordingly, the union's motion for summary judgment will be granted.

---

11. *Cf. Mikkilinenni v. United Engineers & Constructors, Inc.*, 485 F.Supp. 1292, 1297–1298 (E.D.Pa.1980) ("[o]rdinarily, informal resolution of disputes and voluntary compliance with administrative regulations is preferred, especially where a regulatory mechanism has been established for the specific purpose of mediation and conciliation of disputes"), *International Ladies' Garment Workers' Union, Local No. 111 v. DeeVille Blouse Co.*, 486 F.Supp. 1253 (E.D.Pa.1980) (requiring plaintiff to comply with administrative procedures of a collective bargaining agreement), and *Martin v. Easton Publishing Co.*, 478 F.Supp. 796, 797 (E.D.Pa. 1979) (requiring plaintiff to comply with Title VII administrative procedures in order to foster "the possibility of resolving disputes without the antipathies spawned by litigation and of affording the prospective defendant an opportunity to comply with the law voluntarily or to explain and justify his conduct prior to the expense and publicity of litigation").